# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |  |
|---|---|---|
| DAVID E. HARVEY BUILDERS, INC., d/b/a HARVEY-CLEARY BUILDERS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-00853 (LO/TCB) |
| v. | ) ) ) | |
| TYSONS CORNER HOTEL I LLC, | ) ) | |
| Defendant. | ) ) | |

## ANSWER AND COUNTERCLAIMS

Defendant Tysons Corner Hotel I LLC ("TCH"), by counsel, hereby answers the Complaint filed by Plaintiff David E. Harvey Builders, Inc., d/b/a Harvey-Cleary Builders ("HCB"), stating as follows:

### JURISDICTION AND PARTIES

1.     TCH admits the allegations in the first sentence of Paragraph 1 of the Complaint. TCH lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint and, therefore, denies the same.

2.     TCH admits the allegations in Paragraph 2 of the Complaint.

3.     The allegations in Paragraph 3 of the Complaint are legal conclusions to which no response is required.

### FACTUAL BACKGROUND

4.     TCH denies that the name of the hotel is the Tysons Corner Center Hotel.  TCH admits the remaining allegations in Paragraph 4 of the Complaint.

5.     TCH denies the allegations in Paragraph 5 of the Complaint.

**Katten**
KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

6.      TCH admits that TCH and HCB entered into the Contract. TCH admits that Exhibit 1 to the Complaint appears to be a true and correct copy of the Contract.

7.      TCH admits the allegations in Paragraph 7 of the Complaint.

8.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 8 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

9.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 9 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

10.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 10 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

11.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 11 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

12.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 12 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

13.      TCH states that the Contract speaks for itself and that, to the extent that Paragraph 13 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

14. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 14 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

15. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 15 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

16. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 16 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

17. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 17 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

18. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 18 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

19. TCH states that the Contract speaks for itself and that, to the extent that Paragraph 19 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

20. The allegation in Paragraph 20 of the Complaint that Harvey-Cleary entered into subcontracts "[i]n order to perform its scope of work under the Contract" is a legal conclusion to which no response is required. TCH admits that Harvey-Cleary entered into subcontracts with the subcontractors listed in Paragraph 20 of the Complaint, with the exception of Johnson Architectural Metals. TCH lacks sufficient information or knowledge to form a belief as to the

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

truth of the allegation that HCB entered into a subcontract with Johnson Architectural Metals and, therefore, denies the same.

21.     TCH denies the allegations in Paragraph 21 of the Complaint.  Pleading further, TCH states that it issued the Notice to Proceed on March 12, 2013.

22.     TCH admits that the contractual substantial completion date for the Project was extended to January 15, 2015.  TCH denies the remaining allegations in Paragraph 22 of the Complaint.

23.     TCH denies the allegations in Paragraph 23 of the Complaint.

24.     TCH denies the allegations in Paragraph 24 of the Complaint.

25.     TCH denies the allegations in Paragraph 25 of the Complaint.

26.     TCH admits that, in August 2014, HCB submitted a revised schedule update that reflected an extension to the contractual substantial completion date for the Project beyond January 15, 2015.  TCH denies the remaining allegations in Paragraph 26 of the Complaint.

27.     TCH denies the allegations in Paragraph 27 of the Complaint.

28.     TCH admits the allegations in Paragraph 28 of the Complaint.  Pleading further, TCH states that its acceleration directive was issued in October, not August, 2014.

29.     TCH denies the allegations in Paragraph 29 of the Complaint.

30.     TCH denies the allegations in Paragraph 30 of the Complaint.

31.     TCH admits that, in late August 2014, HCB submitted a schedule update that reflected a January 15, 2015, substantial completion date.  HCB denies the remaining allegations in Paragraph 31 of the Complaint.

32.     TCH denies the allegations in Paragraph 32 of the Complaint.

Katten
Katten Muchin Rosenman LLP
2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

33. TCH admits that the parties met on or around August 27, 2014, to discuss the Project schedule. TCH denies the remaining allegations in Paragraph 33 of the Complaint.

34. TCH admits that HCB provided TCH with some information regarding the costs that HCB and its subcontractors would incur in completing the Project, including information regarding staffing levels and hours. TCH denies the remaining allegations in Paragraph 34 of the Complaint.

35. TCH denies the allegations in Paragraph 35 of the Complaint.

36. TCH admits that Woodbine reviewed the cost information submitted by HCB; that, in September 2014, Woodbine requested additional cost information; and that HCB provided some additional information. TCH denies the remaining allegations in Paragraph 36 of the Complaint.

37. TCH denies the allegations in Paragraph 37 of the Complaint.

38. TCH denies the allegations in Paragraph 38 of the Complaint. Pleading further, TCH states that the delays on the Project were caused by HCB.

39. TCH denies the allegations in Paragraph 39 of the Complaint.

40. TCH admits that it sent HCB an email on September 12, 2014, requesting additional cost information and commenting on certain subcontractor costs. TCH denies the remaining allegations in Paragraph 40 of the Complaint.

41. TCH denies the allegations in paragraph 41 of the Complaint.

42. TCH admits that the parties met on October 1, 2014 to discuss the Project and that TCH stated during the meeting that HCB was responsible for the costs of acceleration. TCH denies the remaining allegations in Paragraph 42 of the Complaint.

43. TCH denies the allegations in Paragraph 43 of the Complaint.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

44.     TCH admits that Woodbine issued CCD 51, which speaks for itself.  TCH denies the remaining allegations in Paragraph 44 of the Complaint.

45.     TCH admits the allegations in Paragraph 45 of the Complaint.

46.     TCH denies the allegations in Paragraph 46 of the Complaint.

47.     TCH admits that HCB submitted a Claim and Request for Equitable Adjustment. TCH denies the remaining allegations in Paragraph 47 of the Complaint.

48.     TCH denies the allegations in Paragraph 48 of the Complaint.

49.     TCH admits that HCB submitted a supplement to its claim on January 14, 2015. TCH denies the remaining allegations in Paragraph 49 of the Complaint.

50.     TCH denies the allegations in Paragraph 50 of the Complaint.

51.     TCH denies the allegations in Paragraph 51 of the Complaint.

52.     TCH admits the allegations in Paragraph 52 of the Complaint.

53.     TCH denies the allegations in Paragraph 53 of the Complaint.

54.     TCH admits that HCB submitted a second supplement to its claim on November 24, 2015.  TCH denies the remaining allegations in Paragraph 54 of the Complaint.

55.     TCH denies the allegations in Paragraph 55 of the Complaint.

56.     TCH denies the allegations in Paragraph 56 of the Complaint.

57.     TCH denies the allegations in Paragraph 57 of the Complaint.

58.     TCH denies the allegations in Paragraph 58 of the Complaint.

59.     TCH denies the allegations in Paragraph 59 of the Complaint.

60.     TCH denies the allegations in Paragraph 60 of the Complaint.

61.     TCH denies the allegations in Paragraph 61 of the Complaint.

62.     TCH admits the allegations in Paragraph 62 of the Complaint.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

63.     TCH denies the allegations in Paragraph 63 of the Complaint.

64.     TCH denies the allegations in Paragraph 64 of the Complaint.

65.     TCH denies the allegations in Paragraph 65 of the Complaint.

## COUNT I
## (Breach of Contract)

66.     TCH incorporates by reference its answers to Paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.     The allegations in the first sentence in Paragraph 67 of the Complaint are legal conclusions to which no response is required.  With respect to the second sentence in Paragraph 67 of the Complaint, TCH states that the Contract speaks for itself, and, therefore, to the extent that Paragraph 67 of the Complaint purports to characterize the contents, intent, or meaning of the Contract, TCH denies those allegations.

68.     TCH denies the allegations in Paragraph 68 of the Complaint.

69.     TCH denies the allegations in Paragraph 69 of the Complaint.

## COUNT II
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

70.     TCH incorporates by reference its answers to Paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71.     TCH admits that it and HCB entered into the Contract.  The remaining allegations in Paragraph 71 of the Complaint are legal conclusions to which no response is required.

72.     The allegations in Paragraph 72 of the Complaint are legal conclusions to which no response is required.

73.     TCH denies the allegations in Paragraph 73 of the Complaint.

74.     TCH denies the allegations in Paragraph 74 of the Complaint.

## Katten
Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

## COUNT III
### (Quantum Meruit – In the Alternative)

75.     TCH incorporates by reference its answers to Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76.     TCH denies the allegations in Paragraph 76 of the Complaint.

77.     TCH denies the allegations in Paragraph 77 of the Complaint.

78.     TCH denies the allegations in Paragraph 78 of the Complaint.

79.     TCH denies the allegations in Paragraph 79 of the Complaint.

80.     TCH denies the allegations in Paragraph 80 of the Complaint.

## COUNT IV
### (Actual Fraud)

81.     TCH incorporates by reference its answers to Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82.     TCH denies the allegations in Paragraph 82 of the Complaint.

83.     TCH denies the allegations in Paragraph 83 of the Complaint.

84.     TCH denies the allegations in Paragraph 84 of the Complaint.

85.     TCH admits that it and HCB held meetings and exchanged communications and information regarding the Project between late August 2014 and early October 2014.  TCH denies the remaining allegations in Paragraph 85 of the Complaint.

86.     TCH denies the allegations in Paragraph 86 of the Complaint.

87.     TCH denies the allegations in Paragraph 87 of the Complaint.

To the extent that the paragraph in the Complaint following Paragraph 87 that begins "WHEREFORE is deemed to contain pleaded allegations, TCH denies those allegations. Pleading further, TCH denies that HCB is entitled to any relief in this matter.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

Any allegation in the Complaint not specifically admitted above is hereby denied.

## **AFFIRMATIVE DEFENSES**

1. The Complaint fails to state a claim upon which relief can be granted.

2. HCB's claims are barred by the express terms of the Contract.

3. HCB's claims are barred by HCB's own material breaches of the Contract.

4. HCB's claims are barred by the statute of limitations.

5. HCB's claims are barred by the doctrines of waiver and estoppel.

6. HCB's claims are barred by the doctrines of release and consent.

7. The Complaint is barred because HCB has suffered no recoverable damages.

8. HCB's claims are barred, in whole or in part, by the doctrines of set-off and recoupment.

TCH expressly reserves the right to amend its defenses or to plead additional defenses as discovery proceeds.

WHEREFORE TCH respectfully requests that the Court deny any and all relief to HCB, enter judgment on all counts of the Complaint in TCH's favor, and grant TCH such other and further relief as the Court deems just and proper, including by awarding TCH, as the prevailing party in this litigation, all of the expenses, costs, and fees, including attorneys' fees, that are recoverable under Section 13.4 of the Contract.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Tysons Corner Hotel I LLC ("TCH"), by counsel, hereby files counterclaims for breach of contract and of the implied covenant of good faith and fair dealing against Plaintiff/Counterclaim-Defendant David E. Harvey Builders, Inc., d/b/a Harvey-Cleary Builders ("HCB"), alleging upon information and belief as follows:

## NATURE OF THE CONTROVERSY

1.       After TCH engaged HCB as its general contractor on a major hotel construction project in Tysons Corner, HCB performed poorly in every conceivable way, ultimately causing the project to open more than two months late.  When TCH instructed HCB to accelerate the construction to meet the contractually agreed deadlines—as was TCH's right under the parties' contract—HCB blamed TCH for HCB's own delays, demanded compensation to which the contract did not entitle it, and ultimately failed to do what was necessary to keep the job on schedule.  HCB's poor performance, including its failure to accelerate and its delivery of the hotel more than two months late, caused TCH to incur damages of more than $6.2 million.

## PARTIES, JURISDICTION, AND VENUE

2.       TCH is a Delaware limited liability company with its principal place of business in California.  TCH's only members are (1) the Alaska Permanent Fund Corporation, an Alaska corporation with its principal place of business in Alaska, and (2) Macerich Tysons Corner Hotel TRS LLC ("MTCH TRS"), a Delaware limited liability company with its principal place of business in California.  MTCH TRS's sole member is Macerich Management Company, a California corporation with its principal place of business in California.

3.       HCB is a Texas corporation with its principal place of business in Texas.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because the hotel construction project that is the subject of this action and from which TCH's claims arose is located in Fairfax County, Virginia.

## FACTS

**The Contract**

6.     TCH is the owner of certain real property (the "Property") in the Tysons Corner area of Fairfax County, Virginia, that is more particularly described in a property description recorded in the Office of the Assessor of Fairfax County under Assessor Parcel Number 0294-01-0035-L2.

7.     On February 27, 2013, TCH and HCB entered into the Standard Form of Construction Contract Between Owner and Contractor (Cost Plus Fee with GMP Amendment) that is attached hereto as Exhibit 1 (the "Contract").

8.     Pursuant to the Contract, HCB served as general contractor for the construction of a Hyatt hotel on the Property (as further defined in the Contract, the "Project").

9.     Addressing the "minimum" standards for HCB's performance of its obligations under the Contract, the Contract provides that HCB shall, *inter alia*:

> conform to the standard of care applicable to those who provide
> construction for projects of a scope and, complexity, and in a
> location, that are comparable to the scope, complexity and location
> of the Project;

\*\*\*

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

act in a manner consistent with a duty of utmost trust and loyalty to Owner ...;

\*\*\*

furnish efficient business administration of the Work,[1] utilizing sufficient senior level management and other qualified personnel to manage the Work; and

\*\*\*

apply its best and highest skill and attention to completing the Work in an expeditious and economical manner, consistent with the expressed best interests of the Owner and within the limitations of the Contract Price, General Conditions Cost Maximum and Contract Time.

Contract § 1.2.

10.     Regarding timeliness, the Contract provides:  "Time is of the essence with respect to all time limits set forth in the Contract Documents that govern the Contractor's performance of its obligations under the Contract Documents."  Contract § 3.1.

11.     More particularly, HCB was required under the Contract to achieve Substantial Completion within a time to be mutually agreed by the parties (originally September 1, 2014), achieve Final Completion within 60 days of Substantial Completion, and achieve Close-Out Completion within 15 days of Final Completion.  Contract §§ 3.3.2-3.3.4.  The Contract also required HCB to achieve certain enumerated Key Milestones (*i.e.*, prior to Substantial Completion) by specified dates.  Contract § 3.3.5.  Similarly, the General Conditions (incorporated into the Contract as Exhibit B thereto) required HCB to "proceed expeditiously with adequate forces and ... achieve Key Milestones, ... Substantial Completion, Final

---

[1] Capitalized terms not specifically defined herein are intended to have the meanings attributed to them by the definitions in the Contract, including Article 1 of its attached General Conditions.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

Completion and Close-Out Completion within the Contract Time," *see* § 8.1.2, subject only to time extensions granted by TCH, *see* § 8.1.3; *accord* § 9.10.1.

12.     HCB's time to complete the Project could be extended only by a timely change order based on Excusable Delay or Compensable Delay. Contract § 3.4.

13.     If requested by TCH because of Unexcused Delay, HCB was required to take "[a]ll measures necessary, including working overtime, additional shifts, Saturdays, Sundays and holidays, to accelerate performance to ensure that the Work is performed within the Contract Time." *See* General Conditions § 8.2.7.1. Moreover, "the cost thereof shall be paid for by Contractor at Contractor's Own Expense." *Id.*

14.     Under the Contract, HBC is the party responsible for any periods when its Unexcused Delays and other delays are concurrent. *See* General Conditions § 8.2.8. Unexcused Delays concurrent with Excusable or Compensable Delays are deemed Unexcused under the Contract. *See* Contract § 3.5.3.

15.     The Contract contains numerous additional provisions regarding HCB's specific responsibilities in preparing and building the Project. *See* Contract art. 4. Among other things, HCB was required to:

- engage subcontractors in sufficient numbers and of sufficient competence to perform the Work, *see* § 4.1.4;

- develop and update adequate, accurate, and complete schedules for the Project in accordance with the Contract's detailed requirements; *see* §§ 4.1.5, 4.2.2;

- "completely perform, to Owner's satisfaction and in a first-class manner, all of the Work in accordance with th[e] ... Contract Documents," *see* § 4.2.1.1;

- "provide and pay for all of the labor, services, materials, machinery, tools, equipment, supervision, coordination, scheduling, utilities, water, heat, permits, taxes, licenses (including, but not limited to, all professional and business licenses), and other work, of any kind, temporary or permanent, required to construct the entirety of the Work in accordance with the Contract Documents and Applicable Laws," *see* § 4.2.1.2;

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

- "supervise and direct the Work using Contractor's best skill and attention, [and] have control over and be solely responsible for all construction means, methods, techniques, sequences, procedures and the coordination of all portions of the Work," *see* § 4.2.1.3; and

- "obtain and pay for all ... permits and approvals required by Governmental Authorities that are related to or required for performance of the Work" (with the exception of high-level "planning, development, and entitlement" approvals and the "general building permit"), *see* § 4.2.5.

16. The General Conditions impose additional requirements on HCB. For example, HCB was required to:

- "provide supervision sufficient to ensure proper coordination for the timely and efficient performance of the Work," *see* § 3.4.2;

- timely order materials and equipment so as to avoid delay, *see* § 3.4.5.2;

- "satisfy[] the requirements and obtain[] the approval of [any] Governmental Authority" required to approve "materials, processes or procedures," *see* § 3.7.5;

- "provide competent, fully qualified personnel to supervise, administer, manage and direct the Work, competently and efficiently, at all times devoting their best skill and attention to perform the Work in accordance with the Contract Documents," *see* § 3.3.1;

- "be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and coordinat[e] all portions of the Work," *see* § 3.3.4;

- be solely responsible for its own "failure to carry out the Work in accordance with the Contract Documents," *see* § 4.1.3; and

- "see to it that all obligations of the Contractor are assumed by (or, 'flow down') to the Subcontractors, of every Tier," *see* § 5.1.4, *accord* § 13.6, and that TCH is an intended third-party beneficiary of all subcontracts, *see* § 5.1.3.

17. Finally, in the General Conditions, HCB represented and warranted, among other things, that:

- it was able to "furnish the plant, tools, materials, supplies, equipment and labor required to complete the Work and perform its obligations under the Contract Documents," *see* § 3.5.1.2;

- it "ha[d] performed substantial work in the past that [wa]s comparable in kind and complexity to the Work and that it is an experienced general contracting firm having the

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

ability, skill and resources necessary to perform and/or provide the Work required of it under the Contract Documents within the limitations of the Contract Price, General Conditions Cost Maximum and Contract Time," *see* § 3.5.1.6; and

- "the Work w[ould] conform to the requirements of the Contract Documents, including, without limitation, any performance standards that are part thereof," *see* § 3.5.2.

18. The Contract entitles TCH to withhold payment of amounts otherwise due to HCB for numerous reasons, including HCB's "failure to timely perform critical portions of the Work," "[a]ny reason ... that would legally entitle owner to withhold under the legal doctrines of setoff or recoupment," "[l]oss caused by Contractor or the Subcontractors to the Owner, a Separate Contractor, an Owner Consultant or any other person or entity under contract to the Owner or to any Separate Contractor or Owner Consultant," or "[a] breach by Contractor of any obligation or provision of the Contract Documents." Contract § 9.6.3.

19. The Contract requires HCB "upon demand [to] defend ..., indemnify and hold harmless" TCH and various other defined Indemnitees "from and against any and all Losses, whether real or alleged, arising out of, relating to or resulting from," *inter alia*, "any act or omission of Contractor or any of its Subcontractors, of any Tier, or any person or entity for whose acts or omissions any of them may be liable" or "the inaccuracy of any warranty or representation by Contractor given in accordance with or contained in this Construction Contract." Contract § 15.1. In addition to this "right of immediate defense," the Contract entitles TCH and the other Indemnitees to be "immediately" reimbursed for the cost, including *inter alia* attorneys' fees, of their defense against any such Losses. *See id.* § 15.5.

20. In this regard, the Contract also provides that HCB's "obligation ... to defend" is not "released, excused, limited or relieved by a finding, determination, award or judgment by a court or arbitrator that the alleged Loss was due to circumstances not within the scope of such indemnification obligation." Contract § 15.5.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

21.     The prevailing party in any litigation related in any way to the Contract, such as this action, is entitled to recover "its actual costs, expenses and attorney's fees (both outside and in-house counsel), court costs (statutory and non-statutory), professional, expert and consultant fees, paralegal fees, investigative costs, postage costs, document copying costs, telecopy costs and any and all other costs and expenses, of mediation, arbitration, trial and on appeal." Contract § 13.4.

## HCB's Delays and Other Breaches of Contract

22.     HCB began working on the Project in March 2013.

23.     The original deadline for Substantial Completion of the Project under the Contract was September 1, 2014. By agreement, the parties extended the Substantial Completion deadline on several occasions, ultimately setting it as January 15, 2015.

24.     HCB did not achieve Substantial Completion until April 1, 2015, however. This material delay of the date for Substantial Completion was due to HCB's continuous, ever-mounting Unexcused Delays in performing the Work. Every month, HCB fell further behind schedule.

25.     HCB's schedules for the Work were noncompliant with the Contract and inadequate to the task. In particular, the schedules were consistently incomplete in scope; HCB was late in preparing schedules and in conducting procurement based on its schedules; and HCB routinely added activities belatedly to its schedules. These problems prevented HCB from remaining on schedule and masked HCB's delays.

26.     Another major impact on the Project arose from HCB's lengthy delay in obtaining a sprinkler permit from Fairfax County that was critical to the timing of many other activities on the Project. On September 24, 2013, the initial shop drawings required in the permitting process were submitted to the County. Thereafter, HCB was responsible for submitting certain

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

calculations and data to the County; HCB had to submit these materials three times, because its submissions were incomplete and incorrect. Thus, the permit was not received until October 15, 2014—more than a year after the shop drawings had been submitted.

27.     In addition, HCB fell behind on ceiling framing and rough-in work that had to be completed in order to proceed with hydrotesting that would be authorized by the sprinkler permit. HCB had to accelerate the ceiling framing and rough-in work in order to complete it by the time the permit was received. Then, HCB exacerbated the effect of the sprinkler permit delay by failing to complete related drywall installation in a timely manner after receiving the sprinkler permit.

28.     HCB also delayed the Project in many other ways. Among other delays, HCB failed to engage subcontractors in sufficient numbers and of sufficient competence to ensure timely completion of the Project. More generally, HCB failed to conform to the standard of care required by the Contract and to apply its best skill and attention to ensuring the timely and proper performance of the Work.

### HCB's Failed Acceleration and Attempts to Blame TCH

29.     On August 11, 2014, HCB submitted a schedule update to TCH that projected a Substantial Completion date of February 4, 2015—nearly three weeks late. HCB has stated that this slippage arose from delays in the installation of (1) electric and data lines in the demising walls of the guestrooms, (2) fire alarm and sprinkler equipment in the guestroom bulkheads, and (3) electric outlets in the bathrooms of the guestrooms. TCH rejected the August 11, 2014, schedule.

30.     On August 16, 2014, because of the numerous delays that had occurred, HCB began voluntarily and unilaterally accelerating its performance of the Work.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

31.     On August 20, 2014, TCH's construction manager, Woodbine Development Corporation, sent HCB a letter invoking General Conditions § 8.2.7.1, which, as explained above, relates to acceleration to overcome Unexcused Delay. In the letter, Woodbine stated that TCH had made a Good Faith Determination that HCB would have to accelerate its efforts to meet the agreed Substantial Completion date of January 15, 2015. Woodbine requested a revised construction schedule and staffing plan, among other materials.

32.     The parties met to discuss the acceleration on August 27, 2014. At this meeting, TCH questioned HCB's understanding of the acceleration required and asked whether HCB had prepared an estimate of the cost of acceleration. HCB admitted that it had not done so. When HCB finally provided this estimate on August 29, 2014, it was grossly inadequate and revealed just how poorly HCB understood the level of acceleration that was actually required to timely complete the Project.

33.     Also during this period, TCH repeatedly had to ask HCB to supplement the acceleration plan and related documentation that it had provided, since HCB continuously failed to provide adequate documentation. In fact, the acceleration plans proved to be inaccurate and insufficient to meet the Contract requirements and schedule.

34.     On September 25, 2014, HCB submitted another schedule update to TCH, this time projecting Substantial Completion on January 22, 2015—still a week late.

35.     The parties met again to discuss the acceleration on October 1, 2014. TCH reiterated at this meeting that Substantial Completion was to be achieved by January 15, 2015. TCH also reminded HCB that HCB was responsible for the cost of acceleration.

36.     HCB abruptly changed its position at the October 1, 2014, meeting, now stating that it would have to "consider" whether to continue accelerating. In response, TCH

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

representatives cautioned HCB that a failure to accelerate and meet the January 15, 2015, Substantial Completion deadline would create enormous financial losses for the Project, for which HCB would be responsible.

37.     In an email on October 4, 2014, Kevin Rogge of HCB stated that acceleration was "no longer relevant." In other words, HCB was refusing to accelerate the Work.

38.     Given the foregoing, Woodbine sent HCB a letter and a Construction Change Directive on October 7, 2014, "to formally direct that HCB maintain and continue an acceleration of the Work pending resolution of the parties' disputes over the responsibility for the circumstances and the costs of its acceleration."

39.     In this letter, Woodbine stated the following:

- Unexcused Delay includes both HCB-caused delay and any other delay for which HCB failed to submit a timely notice and request for extension of time. *See* General Conditions § 1.1.139.

- To the extent HCB had experienced Excusable or Compensable Delays that were concurrent with its Unexcused Delays, such delays were deemed Unexcused under the contractual terms and were HCB's responsibility. *See* Contract § 3.5.3; General Conditions §§ 8.2.8.2, 8.2.8.5.

- Woodbine had made a Good Faith Determination that all delays to date constituted Unexcused Delay.

- Under the plain terms of the Contract, "HCB must comply with the Owner's directive to accelerate, whether or not it agrees with the reasons for the directive."

- "While the full magnitude of the damages that might result are difficult to estimate without knowing the actual date of any future late Project completion, it is believed that the damages for the first sixty days of a late delivery after the contractual January 15, 2015 date of Substantial Completion would likely exceed $4,000,000. These damages include, among other costs, additional hard costs, loss of income and bookings, costs of maintenance, salaries, and taxes, costs of relocation of booked group events, and los[t] reputation to the Owner and Construction Manager."

40.     In a response letter dated October 10, 2014, HCB claimed that the parties had somehow agreed that HCB would be compensated for its acceleration efforts—and, in November

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

2014, HCB submitted a claim seeking such compensation. This claim was based on the issues discussed above relating to (1) the electric and data lines in the demising walls of the guestrooms, (2) the fire alarm and sprinkler equipment in the guestroom bulkheads, (3) the electric outlets in the bathrooms of the guestrooms, and (4) the sprinkler permit. These delays were Unexcused Delays under the Contract.

41.     On November 17, 2014, Woodbine again sent HCB a letter reminding it that "the Owner has consistently maintained that the costs of accelerating the Work are HCB's sole responsibility" because the acceleration was required by Unexcused Delay. Woodbine also noted in this letter that, under separate provisions of the Contract, HCB was responsible for the costs of any acceleration undertaken without a directive from TCH.

42.     Woodbine sent HCB another letter on January 1, 2015, reiterating that "Harvey Cleary is responsible for acceleration costs to maintain your contract date" and that it was "clear that despite your acceleration efforts, the project will still be at least two months late, causing further loss of revenues from the delayed hotel opening."

43.     On January 14, 2015, HCB submitted an updated delay claim. In addition to the four delays discussed above, HCB now blamed TCH for additional delays relating to mechanical access at variable air volume units in drywall ceilings, the rerouting of storm drainage outside a hotel entrance, and structural issues concerning an entrance vestibule. Once again, HCB was blaming TCH and seeking unauthorized compensation for HCB's own Unexcused Delays (and HCB was responsible for numerous other Unexcused Delays that were concurrent with the delays on which it based its claim).

44.     As of January 14, 2015, HCB projected Substantial Completion as February 26, 2015, which was six weeks late.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

45.     On February 17, 2015, Woodbine sent HCB a letter explaining that "HCB is solely responsible for the successive delays of substantial completion on this project" and that TCH "expect[ed] HCB to continue acceleration efforts at its sole expense until the project is completed."

46.     HCB did not achieve Substantial Completion on the Project until April 1, 2015, even though it had never been granted an extension beyond January 15, 2015 (or any corresponding deadline, *e.g.*, Key Milestones, Final Completion, *etc.*), and had been directed to accelerate the Work to meet the January 15, 2015 deadline. Thus, HCB failed to accelerate as required.

47.     To the extent that HCB undertook acceleration efforts, it has not complied with its contractual obligation to bear the cost of those efforts. Rather, it has failed to pay its subcontractors, leading them to bring suit against both HCB and TCH, and has sued TCH seeking to recover its costs incurred through both its failed acceleration and its corresponding extension of performance until April 2015. The Contract unequivocally bars HCB from recovering these costs.

48.     The hotel opened for business on April 14, 2015.

49.     After the hotel opening, it was not until late May 2015 that all of the hotel's guestrooms were available for booking. This delay was due to HCB's continuing failure to complete punchlist items and achieve Final Completion.

50.     On November 24, 2015, HCB submitted its final claim. In addition to the delays discussed above, HCB now cited delays arising from (1) two separate flooding incidents (both of which resulted from faulty workmanship) and (2) changes ordered by the Fire Marshal after inspection of the Work. The costs to repair the water damage are covered by insurance policies,

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

one of which names HCB as an insured and provides HCB's sole remedy for recovery. Once again, HCB was seeking compensation for its own Unexcused Delays (and ignoring its numerous concurrent delays).

51.  The hotel has still not reached Final Completion.

## The Harm Caused by HCB's Delays

52.  Demand for rooms in the hotel has been intense. By early April 2015—before its formal opening—the hotel was already selling out its available rooms. But, as noted above, many rooms remained unavailable due to HCB's continuing delays.

53.  Hotels such as the Project depend heavily on group purchases of guestrooms by large companies with many traveling personnel. These rooms are purchased on a yearly basis, and the transactions are conducted each year between August and December.

54.  If, during the late 2014 transaction window, the Project had been on schedule to meet the contractual Substantial Completion deadline of January 15, 2015, TCH would have transacted many group purchases with large companies for rooms in 2015. But the severely delayed opening of the hotel due to HCB's delays caused TCH to miss its 2014 window and lose nearly all group sales for 2015.

55.  In addition, the delay resulted in lost individual bookings of rooms.

56.  TCH has analyzed the economic effect caused by the delayed opening of the hotel and has determined that TCH lost $3,326,676 in EBITDA in 2015. This analysis is based on the actual and agreed opening dates for the hotel and on the actual financial performance of the hotel and its competitors in 2015, among other factors.

57.  TCH has also incurred $511,102 in pre-opening expenses caused by the late opening of the hotel.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

58.     TCH has also incurred nearly $2 million in additional costs occasioned by the delays caused by HCB.  These costs relate to the extension of the pre-opening period for the hotel (approximately $582,000), of the period during which Woodbine and Macerich development personnel worked on the Project (approximately $843,000), and of the period during which the design team worked on the Project (approximately $260,000), as well as additional storage and cleaning costs.

59.     Additionally, TCH has incurred approximately $200,000 in costs made necessary by HCB's continuing failure to achieve Final Completion.  TCH has been forced to engage third-party contractors and work through the hotel operator to, *inter alia*, undertake elevator repairs and incur labor charges and repairs as a result of a broken laundry chute—all necessitated by HCB's failure to perform its Contract.

**HCB's Refusal to Defend TCH Against Subcontractor Claims**

60.     Beginning in late 2015, numerous HCB subcontractors recorded mechanic's liens against the Project, and several have filed lawsuits seeking to enforce those liens and to recover other payments allegedly due.  HCB, TCH, and various entities related to TCH have been named as defendants in these actions.

61.     Based on the provisions of Article 15 of the Contract, cited in Paragraphs 19 and 20 above, HCB, for a time, consistently bonded off the mechanic's liens at issue in these subcontractor actions and obtained the dismissal of TCH and all related parties from the actions.

62.     In June 2016, however, HCB abruptly informed TCH that it would no longer comply with its obligations to defend and indemnify TCH and other Indemnitees against such subcontractor actions.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

63.     Since that time, TCH has been served with two subcontractor actions—filed by Pillar Construction, Inc., and by Johnson Controls, Inc.—that it has had to defend on its own account, even though HCB is required to do so under Article 15 of the Contract.   TCH made a formal demand on HCB regarding each of these actions, but HCB has refused to defend and indemnify TCH and the other Indemnitees as the Contract requires.   TCH expects to be served with other subcontractor complaints in the near future and believes that HCB will maintain its position in derogation of the Contract.

64.     In defending against these lawsuits, TCH has incurred, and will continue to incur, expenses that it is entitled to recover as damages in this case.

### COUNT I
### BREACH OF CONTRACT AND OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING

65.     TCH incorporates by reference the allegations set forth in Paragraphs 1 through 64 of these Counterclaims as if fully set forth herein.

66.     The Contract is a valid and enforceable contract between TCH and HCB.

67.     HCB materially breached the Contract and the covenant of good faith and fair dealing implied in it by, *inter alia*:

    a.     failing to achieve Substantial Completion by the contractual deadline of January 15, 2015, and instead completing the Project more than two months later;

    b.     failing to meet other deadlines imposed by the Contract, including Key Milestones, Final Completion, and Close-out Completion;

    c.     refusing, then failing, to accelerate the Work sufficiently to ensure timely completion of the Project after being directed to accelerate by TCH;

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

d.      consistently failing to develop and update adequate, accurate, and complete schedules for the Project as required by the Contract;

e.      failing to obtain the critical sprinkler permit in a timely fashion, and failing to perform in a timely fashion related work both preceding and following the receipt of the sprinkler permit;

f.      causing numerous other critical delays over the course of the performance of the Work;

g.      failing to engage subcontractors in sufficient numbers and of sufficient competence to ensure timely completion of the Project;

h.      failing to conform to the standard of care required by the Contract and to apply its best skill and attention to ensuring the timely and proper performance of the Work;

i.      delaying the completion of the Project by more than two months despite the absence of a change order authorizing any such extension;

j.      refusing to pay for the cost of its acceleration efforts to overcome its Unexcused Delays, and instead bringing suit against TCH to recover that cost; and

k.      refusing to defend and indemnify TCH and related parties against subcontractor lawsuits in violation of HCB's obligations under Article 15 of the Contract.

68.      These actions were breaches of the implied covenant of good faith and fair dealing, in addition to the express Contract terms, because HCB's conduct was dishonest and undertaken in bad faith.  HCB knew that it was contractually responsible for accelerating to overcome its Unexcused Delays and for bearing the cost of that acceleration, yet it claimed that TCH was responsible for the delays and the cost of acceleration and refused and failed to

Katten

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

accelerate sufficiently to overcome its Unexcused Delays. HCB also knew that it was required to defend and indemnify TCH and related parties against the subcontractor actions that were brought against them and, indeed, complied with these obligations for a time, yet it decided in June 2016 simply to stop fulfilling its obligations in this regard.

69.     HCB's actions delayed the opening of the hotel until April 14, 2015, which prevented TCH from obtaining large, annual group purchases of rooms for 2015 during the late 2014 window for such purchases. TCH lost nearly all group sales for 2015 as a result of HCB's conduct. TCH also lost individual bookings of rooms because of the delayed opening. HCB's actions also caused TCH to incur additional completion costs as well as the cost of defending against subcontractor lawsuits despite HCB's obligation to do so at its own expense and to indemnify TCH for its costs of defense.

70.     As a reasonable, foreseeable, direct, and proximate result of HCB's material breaches of the Contract, TCH has been damaged in an amount in excess of $6.2 million.

WHEREFORE TCH respectfully requests that the Court issue an order

a)     finding that HCB materially breached the Contract and the implied covenant of good faith and fair dealing that is part of the Contract;

b)     awarding TCH compensatory damages in an amount to be determined at trial, but not less than $6.2 million;

c)     awarding TCH, as the prevailing party in this litigation, all of the expenses, costs, and fees, including attorneys' fees, recoverable under Section 13.4 of the Contract;

d)     awarding TCH such other costs, fees, and expenses as allowable by law; and

e)     awarding TCH such other and further relief as this Court deems just and proper.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

July 12, 2016        Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**


/s/ Joseph F. Fiorill
Joseph F. Fiorill, Esq. (Va. Bar No. 89972)
S. Scott Morrison, Esq. (motion for *pro hac vice* admission to
be submitted)
2900 K Street, N.W.
North Tower – Suite 200
Washington, D.C. 20007
(202) 625-3500 / (202) 298-7570 (fax)
joseph.fiorill@kattenlaw.com
scott.morrison@kattenlaw.com

*Counsel for Defendant*

**Katten**
Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2016, true and correct copies of the foregoing Answer

and Counterclaims were served by electronic and first-class mail on:

Charlie C.H. Lee
Jason C. Constantine
Moore & Lee, LLP
1751 Pinnacle Drive, Suite 1100
McLean, Virginia 22102
(703) 506-2050
fax (703) 506-2051
c.lee@mooreandlee.com
j.constantine@mooreandlee.com

*Counsel for Plaintiff*

/s/ Joseph F. Fiorill
Joseph F. Fiorill

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax